IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMILLAH NADERAH GRIFFIN,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 17-cv-5378 |
| **PIEDMONT AIRLINES, ET AL.,** | : | |
| *Defendants.* | : | |

Goldberg, J.                                                                                           January 17, 2020

**Memorandum Opinion**

Plaintiff, Jamillah Naderah Griffin, accuses her employer, Piedmont Airlines ("Piedmont"), and manager, Glenda Rivera, of terminating her in retaliation for her filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff brings claims against both defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Defendants have moved for summary judgment.

For the foregoing reasons, I find that there is no genuine dispute as to any material fact for a jury to consider, and accordingly, I will grant Defendants' motion.

**I. STATEMENT OF FACTS**

The following facts are taken from the parties' Statements of Facts ("SOF") together with attached exhibits. Unless otherwise indicated, these facts are undisputed.

Plaintiff began working for Piedmont as a gate agent at the Philadelphia International Airport on April 28, 2008. (Defs.' SOF ¶ 1, ECF No. 39-3.) Plaintiff worked on a part-time basis beginning in 2012 and simultaneously held full-time employment with other employers. (Id. ¶¶ 2–3.)

1

### A. The July 1, 2016 Incident and Suspension

On July 1, 2016, Plaintiff reported to work wearing pink socks, which violated Piedmont's uniform requirements. (Id. ¶ 13.) Plaintiff's manager, Zenaida Orona, confronted her about this noncompliance. (Id. ¶¶ 14–16.) Defendants have provided the statements of eight employees, wherein they each state that they observed this confrontation and witnessed Plaintiff becoming angry, upset, and/or screaming at Ms. Orona. (Defs.' Mot. for Summ. J., Ex. I, ECF No. 39-4.) While Plaintiff acknowledges that other employees were present during this incident, she denies their observations and points to her deposition wherein she testified that she was not screaming, and that Ms. Orona was speaking to her in a condescending manner. (Griffin Dep. 2013:13–209:15, 142:21–144:21, Jan. 16, 2019, ECF No. 39-4.) On the same day, Plaintiff notified Defendants that she intended to file an EEOC claim against Ms. Orona for racial discrimination. (Id. ¶ 19.)

Again, on the same day, Plaintiff, Ms. Orona, and a union representative met regarding the incident. According to Plaintiff, during this meeting, Ms. Orona told her that she was being suspended for her disrespectful behavior. (Griffin Dep. 200:18–202:5.) Plaintiff alleges that Ms. Orona's statement was in response to Plaintiff's notification that she intended to file an EEOC claim. (Id. ("What I [Plaintiff] was being told is that she [Orona] was suspending me based on me disrespecting her because I said that I was going to file an EEOC claim against – for discrimination.").)

Plaintiff was sent home for unprofessional conduct and placed on a temporary suspension pending Piedmont's investigation of the incident. (Defs.' SOF ¶ 19, ECF No. 39-3.) Plaintiff was subsequently issued a suspension notification form, stating that a meeting would be scheduled to discuss the suspension and that the "[f]ailure to attend this required meeting could result in further

disciplinary action up to and/or including suspension and/or termination." (Id. ¶¶ 20–21.) Plaintiff signed the suspension notification form and provided her phone number. (Id. ¶¶ 22–24.)

### B. Plaintiff's Termination on July 22, 2016

Between July 6, 2016 and July 13, 2016, Defendants allege that they called Plaintiff seven times in an attempt to discuss her suspension and to get her back to work. Defendants note that Defendant Rivera, who was Plaintiff's manager, left messages with Plaintiff and kept a handwritten log of each attempted call. (Id. ¶¶ 25–37.) Defendants assert that, on July 12, 2016, Defendant Rivera asked Carol Taylor, Plaintiff's union representative, to be present for the call attempt because Defendant Rivera was having a difficult time reaching Plaintiff. (Id. ¶¶ 32–35.) Because they were unable to reach Plaintiff, Ms. Taylor informed the union president of the situation. (Id. ¶ 36.) Plaintiff "categorically" denies all of these facts, stating that she never received any phone calls. (Griffin Dep. 219:8–220:13, 227:1–20.)

On July 14, 2016, Defendant Rivera sent an email to the administration department manager to request that he send a letter to Plaintiff regarding the suspension. (Defs.' SOF ¶ 38.) Defendants posit that they sent Plaintiff a letter on July 15, 2016, advising that they had made multiple attempts to contact her regarding her suspension and requiring her "to contact Ramp Department Manager Glenda Rivera on Tuesday July 19, 2016 by 1700." (Id. ¶ 41.) The letter further instructed that the failure to report to this meeting "will be considered as a voluntary resignation." (Id.) While Plaintiff acknowledges the truth of the content, she denies ever receiving the letter. (Griffin Dep. 231:8–232:11.)

On July 22, 2016, Piedmont sent Plaintiff a termination letter. (Id. ¶ 50.) Defendants state that Plaintiff was terminated only because she failed to respond to the communications. (Id. ¶¶ 46–49.) While Plaintiff acknowledges that she did not contact Defendant Rivera by July 19, 2016,

3

she testified that she "had no knowledge that she was supposed to" contact Defendants. (Griffin Dep. 235:5–16.) Plaintiff also denies Defendants' purported reason for her termination, responding that she was terminated because she filed an EEOC complaint. Plaintiff does not, however, point to any evidence of record in support of this assertion. (Pl.'s Resp. to Defs.' SOF ¶ 51, ECF No. 42-1.)

### C. Plaintiff's EEOC Charge on August 3, 2016

On August 3, 2016, Plaintiff filed an EEOC Charge alleging race and gender discrimination, claiming that Defendants retaliated against her for informing Ms. Orona that she was going to file an EEOC charge. (Defs.' SOF ¶¶ 53–54.)

### D. Plaintiff's Reinstatement on October 18, 2016

Sometime between August 3, 2016 and August 15, 2016, Plaintiff called Defendant Rivera about her suspension, wherein Rivera stated that she had attempted to reach Plaintiff several times. Plaintiff responded that she had not received any phone calls and was unaware of her termination. (Id. ¶¶ 56–58.) On August 15, 2016, Plaintiff sent a letter to the director of regional operations, Frank Morales, stating that she had not received any communications, that she had only recently learned of her termination, and requesting that he reconsider the termination. (Id. ¶ 59.) On August 26, 2016, Plaintiff's union filed a grievance on her behalf. (Id. ¶¶ 60–66.)

Defendant Rivera and Mr. Morales learned of Plaintiff's EEOC Charge sometime between August 2016 and October 2016. (Id. ¶ 67.) Plaintiff testified at her deposition that Defendant Rivera instructed her that she had to drop the EEOC Charge to be reinstated: "I think that Glenda [Rivera] was retaliating against me for not dropping that EEO [sic] claim, because Glenda said that contingent upon me dropping the EEOC claim that they would not bring me back. And Glenda said that Michelle Foose said it and I called you about it." (Griffin Dep. 222:11–19.) However,

Plaintiff clarifies later in her deposition that Defendant Rivera did not directly state that reinstatement was dependent upon the withdrawal of the EEOC Charge, but rather, that condition was instead communicated to her by her union representative, Ms. Taylor:

> Q: My question is, did you have any conversations with people at the company about whether recalling your employment would resolve your EEOC charge?
>
> A: I can't recall.
>
> Q: Well, you had said earlier that Glenda Rivera made a comment about resolving your EEOC charge in order for you to come to work. How did you learn about that, come back to work?
>
> A: Oh. Carol Taylor.
>
> Q: What did Carol Taylor tell you?
>
> A: She said that -- she said Glenda [Rivera] and Frank said Michelle Foose said that I cannot come back unless I drop the EEOC -- they will not reinstate me unless I drop the EEOC case.
>
> Q: And you would agree that you were speaking to Carol Taylor in her capacity as your union representative; correct?
>
> A: Yes.
>
> Q: So nobody at the company told you that; correct?
>
> A: That's correct.
>
> Q: Did you have a conversation with Michelle Foose about whether bringing you back to work would resolve your concerns in the EEOC charge?
>
> A: I don't -- if it would resolve it? I had a conversation about what was told per -- what she supposedly said to them.
>
> Q: Okay, and what was the response?
>
> A: She said -- she told Glenda [Rivera] and Frank that she didn't want no parts of it and that they cannot do that; that I had a right to file the EEOC case as well as a grievance there, and that doesn't have anything to do with it, that's my right to file with the EEOC.

Q: And after she said that and after you did not withdraw your EEOC charge, were you reinstated?

A: Yes

(Id. 261:20–263:23.)

On October 18, 2016, Plaintiff, Defendant Rivera, and Mr. Morales met to discuss the union grievance that had been filed in August of 2016. (Defs.' SOF ¶ 74.) During this meeting, Plaintiff was reinstated with the understanding that reinstatement would be revoked if Plaintiff did not answer Piedmont's phone calls. (Id. ¶¶ 76–78.)

### E. Plaintiff's Second Termination on November 30, 2016

On October 29, 2016, Plaintiff met with Suzette Salmon to complete the airport badge application form, as required by Piedmont. (Id. ¶¶ 82–83.) During this meeting, Ms. Salmon advised Plaintiff that Piedmont would contact her once she was cleared to get her badge and schedule appointments. (Id. ¶ 86.) Plaintiff was cleared for work on November 10, 2016. (Id. ¶ 87.) Between November 10, 2016 and November 30, 2016, Defendants state that they attempted to contact Plaintiff regarding her clearance via phone calls, and that a letter was sent to her home address on November 17, 2016. (Id. ¶¶ 87–94.) Defendants assert that they left several messages with Plaintiff and that a union president witnessed at least one of the call attempts. (Id.) At her deposition, Plaintiff denied receiving any communication from Piedmont's representatives. (Griffin Dep. 269:9–271:11.)

Plaintiff was terminated on November 30, 2016. (Defs.' SOF ¶ 97.) Defendants provide emails sent between Piedmont administrators, wherein they state that they terminated Plaintiff because she "ha[d] not made contact to reinstate." (Id. ¶¶ 95–96.) Plaintiff attempts to refute this evidence by pointing to her deposition testimony wherein she testified that she did not receive any communication from Defendants. However, Plaintiff is unable to set forth any other facts which

6

refute Defendants' assertion that she did not respond to Defendants' attempts to reach her. (Pl.'s Resp. to Defs.' SOF ¶¶ 95–96.) Plaintiff further acknowledges that she did not make contact with Piedmont during this time period. (Griffin Dep. 269:9–271:11.) The record also reflects that Plaintiff does not know who made the decision to terminate her employment, although she believes Defendant Rivera terminated her in retaliation for her EEOC filing. (Defs.' SOF ¶ 98.)

On December 2, 2016, Plaintiff went to the airport and advised the administration department manager that she had received no communications from Piedmont. (Id. ¶¶ 100, 102.) Nonetheless, Defendants decided not to reinstate Plaintiff. (Id. ¶ 106.) Defendants allege that reinstatement was denied because Plaintiff's "repeated failure to respond to Piedmont's attempts to schedule her return to work demonstrated a pattern of irresponsibility that Piedmont could not tolerate." (Id.)

On December 19, 2016, Plaintiff's union again filed a grievance on her behalf regarding the November 30, 2016 termination. (Defs.' SOF ¶ 108.) After several reviews, Piedmont's termination of Plaintiff on November 30, 2016 was upheld. (Id. ¶¶ 110–112.)

Plaintiff subsequently filed two additional EEOC Charges against Piedmont on December 28, 2016 and August 7, 2017. (Id. ¶ 109, 112.)

On November 30, 2017, Plaintiff filed this lawsuit against Defendants Piedmont and Rivera. (Compl., ECF No. 1.) In her Complaint, Plaintiff alleges (1) discrimination in violation of Title VII, (2) discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("AEDA"), and (3) retaliation in violation of Title VII. (Id.) After Defendants filed a motion to dismiss, I dismissed all claims except for the retaliation cause of action. (Order, May 30, 2018, ECF No. 13.)

7

On May 8, 2019, Defendants moved for summary judgment on the retaliation claim. (Defs.' Mot. for Summ. J., ECF No. 39.) On June 5, 2019, Plaintiff filed her response. (Pl.'s Resp., ECF No. 42.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016).

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the

8

moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

Plaintiff alleges retaliation under Title VII, claiming that Defendants terminated her in November of 2016 because she filed a charge with the EEOC in August of 2016. (Compl., ECF No. 1.) Defendants move for summary judgment, arguing that Plaintiff cannot establish the requisite element of causation or show that their proffered legitimate business purpose was pretext. (Defs.' Mot. for Summ. J., ECF No. 39.) Plaintiff responds that there are disputed material facts that preclude the granting of summary judgment. (Pl.'s Resp., ECF No. 42.) For the foregoing reasons, I find that Plaintiff has failed to establish either a *prima facie* case of retaliation or evidence of pretext.

### A. Plaintiff's Failure to Establish a *Prima Facie* Case

Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "A plaintiff

seeking to establish a prima facie case of retaliation under Title VII must show: (1) that she engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) 'adverse action by the employer either after or contemporaneous with the employee's protected activity'; and (3) a causal connection between the protected activity and the adverse action." Moore v. Sec'y U.S. Dep't of Homeland Sec., 718 F. App'x 164, 166 (3d Cir. 2017) (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)). "To establish a causal link between the protected activity and adverse action, an employee 'may rely on the temporal proximity' between the two events if the level of proximity is 'unusually suggestive' of a link." Id. at 166–67 (quoting Daniels, 776 F.3d at 196).

The parties do not dispute that Plaintiff has satisfied the first two elements of her *prima facie* case: she engaged in a protected activity by filing a complaint with the EEOC and was thereafter terminated. (Defs.' Mem. of Law 5, ECF No. 39-2.) However, Defendants argue that Plaintiff cannot establish the third element of causation because there is no temporal proximity and no evidence of retaliatory animus. (Id. at 5–8.)

More specifically, Defendants argue that Plaintiff cannot establish a temporal proximity because approximately four months elapsed between her filing of the EEOC Charge and her termination. (Defs.' Mem. of Law 5, ECF No. 39-2.) Plaintiff responds that Defendants have distorted the timeline of events because it took three months for Plaintiff to be reinstated and receive badge approval. (Pl.'s Resp. 10, ECF No. 42.) "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007).

The undisputed facts of record are that Plaintiff filed the EEOC Charge on August 3, 2016, was reinstated on October 18, 2016, and was terminated on November 30, 2016. (Defs.' SOF ¶¶ 53–54, 74, 97.) Because almost four months elapsed between Plaintiff's protected activity and the termination, I agree with Defendants that Plaintiff has failed to establish material facts which, if accepted, could establish causation based on temporal proximity. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases where the passage of three and four months between the protected activity and adverse action was insufficient, standing alone, to establish a causal link); Bailey v. Commerce Nat. Ins. Servs., Inc., 267 F. App'x 167, 170 (3d Cir. 2008) (unpublished) ("[Plaintiff] fails to establish causation on the basis of temporal proximity. . . . [because] the elapsed period of four months between her protected activity and termination is not unusually suggestive of retaliatory motive.").

Defendants also argue that there is no evidence of any acts of intervening antagonism or retaliatory animus in light of the fact that it is undisputed that Defendants were actively trying to facilitate Plaintiff's return to work. (Defs.' Mem. of Law 6–7.) Plaintiff responds that disputed material facts exist at this point rendering summary judgment inappropriate. (Pl.'s Resp. 10–11.) For example, Plaintiff denies being contacted by Defendants at any point. (Id.)

"[A]n employee's receipt of favorable treatment after engaging in protected activity severely undermines a claim that there was a causal connection between the activity and the adverse employment action." Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 332 (3d Cir. 2016). The undisputed evidence of record here demonstrates that both Mr. Morales and Defendant Rivera knew by October of 2016 that Plaintiff had filed an EEOC Charge, and yet still reinstated her on October 18, 2016. (Defs.' SOF ¶¶ 67, 76–78.) Additionally, Plaintiff admitted in her deposition that no one from Piedmont ever directly told her that she had to drop her EEOC case to be

11

reinstated. (Griffin Dep. 261:20–263:23.) In light of this undisputed favorable treatment, and absent evidence to the contrary, I find that Plaintiff has failed to establish the requisite causal connection between her engagement in a protected activity and the termination.

Accordingly, I find that Plaintiff has failed to establish the necessary elements of her *prima facie* case and will grant Defendants' motion for summary judgment.

### B. Plaintiff Cannot Demonstrate Pretext

Even assuming that Plaintiff could establish a *prima facie* case in support of her retaliation claim, there is nothing in the record that would permit a finding that Defendants' explanation for its employment decision—that Plaintiff repeatedly ignored Defendants' attempts to contact her—was pretext.

The United States Court of Appeals for the Third Circuit evaluates employment discrimination using the burden-shifting framework set forth in McDonnell Douglas, 411 U.S. 792, 802–05 (1973). Under this framework, the plaintiff has "the initial burden" of establishing a *prima facie* case of racial discrimination. In re Tribune Media Co., 902 F.3d 384, 401–02 (3d Cir. 2018). To establish a *prima facie* case, the plaintiff must show that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action despite his qualifications; and (4) the action occurred under circumstances that raise an inference of discriminatory action." Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd, 704 F. App'x 164, 167 (3d Cir. 2017) (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)). Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to "offer evidence of a legitimate, non[-]discriminatory reason for the [adverse employment] action." Id. (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 n.2 (3d Cir. 1998) (alteration in original)).

If a defendant can offer such evidence, the burden shifts back to the plaintiff to show that "the employer's explanation is pretextual." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). "To establish pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that 'casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication,' or (2) present evidence sufficient to support an inference that 'discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" Farzan v. Vanguard Grp., Inc., 582 F. App'x 105, 107 (3d Cir. 2014) (quoting Perskie, 32 F.3d at 762).

While Plaintiff does not directly respond to Defendants' arguments relating to pretext, it appears that she relies upon inadmissible testimony in an attempt to establish pretext. Plaintiff asserts that Defendant Rivera instructed her that she had to drop the EEOC Charge in order to be reinstated: "I think that Glenda [Rivera] was retaliating against me for not dropping that EEO [sic] claim, because Glenda said that contingent upon me dropping the EEOC claim that they would not bring me back. And Glenda said that Michelle Foose said it and I called you about it." (Griffin Dep. 222:11–19.) However, this exchange mischaracterizes the record because Plaintiff clarifies later in her deposition that Defendant Rivera did not directly state this to her, but rather, that Defendant Rivera's comments were instead communicated to Plaintiff by her union representative, Ms. Taylor. As noted earlier in this Opinion, this testimony is as follows:

> Q: My question is, did you have any conversations with people at the company about whether recalling your employment would resolve your EEOC charge?
>
> A: I can't recall.
>
> Q: Well, you had said earlier that Glenda Rivera made a comment about resolving your EEOC charge in order for you to come to work. How did you learn about that, come back to work?
>
> A: Oh. Carol Taylor.

> Q: What did Carol Taylor tell you?
>
> A: <u>She said that -- she said Glenda [Rivera] and Frank said Michelle Foose said that I cannot come back unless I drop the EEOC -- they will not reinstate me unless I drop the EEOC case.</u>

(Id. 261:20–262:16 (emphasis added).)

The testimony referenced above demonstrates that Plaintiff did not directly hear these comments from Defendant Rivera. Rather, Michelle Foose's comment regarding the alleged conditional reinstatement, which was allegedly premised upon dropping the EEOC Claim, was relayed to Plaintiff by the union representative (Carol Taylor), who had allegedly heard it from Glenda Rivera and Frank Morales. This constitutes several layers of hearsay. Moreover, Plaintiff has not produced an affidavit or deposition testimony from Ms. Taylor about this incident. As Plaintiff has not demonstrated that such hearsay testimony would be admissible at trial, and thus available for consideration by the jury, it cannot be considered on summary judgment review. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion.").

In any event, this alleged conversation occurred prior to Mr. Morales's decision to reinstate Plaintiff on October 18, 2016. (Griffin Dep. 222:11–224:5.) And it remains undisputed that Plaintiff was told that her reinstatement would be revoked if she did not answer Piedmont's phone calls moving forward. (Defs.' SOF ¶¶ 76–78.) While Plaintiff disputes receiving the calls and letters after she was cleared to return, she has not produced sufficient evidence to refute Defendants' explanation as to why Plaintiff's termination was not retaliatory. (Pl.'s Resp. to Defs.' SOF ¶¶ 95–96.)

14

Accordingly, I find that Plaintiff has failed to provide any evidence of record to support an argument of pretext.

## IV. CONCLUSION

For the foregoing reasons, I conclude that Defendants are entitled to summary judgment on the only remaining claim for retaliation.

An appropriate Order follows.